**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


TORRENCE BECKER

     v.                                        Civil No.  24-cv-430-JL-TSM

NEW HAMPSHIRE DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, ET AL.


**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**

Self-represented Plaintiff Torrence Becker brought federal civil rights claims under 42 U.S.C. § 1983 and state law claims against the New Hampshire Division for Children, Youth, and Families ("DCYF"); the New Hampshire Department of Health and Human Services ("DHHS"); Catrina Horne; Jessica Surgento; Kimberley McKenney; William Brehm; and John and Jane Doe Defendants. Doc. No. 1. Following preliminary review, only Becker's Fourth Amendment claim (Count I) against Kimberley McKenney remains in the case. Doc. No. 10; Doc. No. 23.  Defendant McKenney moves to dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 33-1 at pgs. 5-11.  For the reasons that follow, the district judge should grant the motion to dismiss Count I, the Fourth Amendment claim against McKenney in her official capacity but deny the motion as to Count I against McKenney in her individual capacity.


**LEGAL STANDARD**

"In assessing whether a complaint can withstand a Rule 12(b)(6) motion, [the court] accept[s] as true all well-pleaded facts, indulging all reasonable inferences in the plaintiff's favor."

Hewes v. Pangburn, 162 F.4th 177, 189 (1st Cir. 2025) (citation omitted) (internal quotation marks omitted). Well-pleaded facts are "non-conclusory, non-speculative[] facts." Kolackovsky v. Town of Rockport, 165 F.4th 114, 119 (1st Cir. 2026) (citations omitted) (internal quotation marks omitted). To avoid dismissal, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

The court provided a summary of the allegations in Becker's complaint in the report and recommendation on preliminary review and will not repeat the entire summary here. Doc. No. 10 at pgs. 2-5. Becker's allegations describe assessments conducted by DCYF of his family, primarily in 2024. Doc. No. 1 at pgs. 4-7. During October and the beginning of November 2024, Becker alleges that DCYF Child Protective Services Worker ("CPSW") Kimberley McKenney met with Becker and his children, was involved in placing the children at their grandparents' home, did not respond to his inquiries, and entered his home without his permission. Id. at pgs. 4-14. On preliminary review, the court dismissed all claims against all parties except the Fourth Amendment claim alleged against Kimberley McKenney in Count I. Doc. No. 10; Doc. No. 23.

Pertinent to Becker's Fourth Amendment claim against McKenney, Becker alleges that on October 28, 2024, "CPSW McKenney, without prior notice or parental consent . . . [e]ntered Plaintiff's private residential building through the first-floor entrance."[1] Doc. No. 1 at ¶ 69. He further alleges that his entrance was "clearly marked" and had a mail slot. Id. at ¶ 77(b). Based on

---

[1] Although Becker alleges that McKenney visited his apartment on October 29 in paragraph 69, later he alleges that the event occurred on October 28, 2024. Doc. No. 1 at ¶¶ 77(b), 101, & 103. The court assumes that Becker erred in writing October 29 in paragraph 69.

Becker's allegations, McKenney opened the exterior door with the mail slot, went upstairs to the third floor on Becker's "private stairwell," and walked into a hallway and up to the door of Becker's apartment, where she talked to Becker's son in the doorway. Id. at ¶¶ 69, 77(b).

Becker provided additional descriptions of the entrance to his apartment in his objection to McKenney's motion to dismiss.[2] Doc. No. 37 at pgs. 9, 15-18. He states that the entrance McKenney used is his private entrance, that it is the only entrance to his third-floor apartment, that he has the only key to that entrance, that there is no access to any other units or common areas from his entrance, and that the stairs and hallway are not shared with any other tenants. Id. at pg. 15. In addition, Becker states that his rent includes his use of the private entrance, stairway, and hallway to his apartment and that he stores personal items in the hallway, including personal artwork, a wedding book, his mail on a table, and a dog leash. Id. He also states that his exterior entrance is private and located on the front porch of the building, that the exterior door has only his address and his mail slot, and that his entrance is separate from a common entrance to other units in the building. Id.

### DISCUSSION

McKenney moves to dismiss Becker's Fourth Amendment claim, Count I. Doc. No. 33. In Count I, Becker alleges that McKenney violated his Fourth Amendment right against

---

[2] Ordinarily, a plaintiff cannot add new claims and allegations in his opposition to a motion to dismiss to "fill the void left by the lack of adequate allegations in the complaint." Kolackovsky,165 F.4th at 120. Becker, however, is proceeding pro se and is entitled to some leniency in construing his complaint. Conley v. Gibson, 355 U.S. 41, 78 (1957). In exercising leniency, the court must not dismiss the claim unless Becker "cannot prove any set of facts entitling [him] to relief." Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). For these reasons, the court considers the explanations Becker provides in his objection to augment the allegations in his complaint.

unreasonable searches by "entering [his] private entrance without consent or warrant on October 28, 2024." Doc. No. 1 at ¶ 103. McKenney moves to dismiss on the grounds that Becker did not allege that she entered an area protected by the Fourth Amendment, that she is protected by qualified immunity, that Eleventh Amendment sovereign immunity bars the claim against her in her official capacity, and that the Ex parte Young exception to sovereign immunity does not apply. Doc. No. 33-1.

## I.      **Fourth Amendment Claim**

It is undisputed in this case that the Fourth Amendment protects against physical intrusion into a home by the government without a warrant, including intrusion by social workers who are investigating reported child neglect issues. Doc. No. 33-1 at pgs. 5-6 (citing Gayda v. City of Nashua, No. 05-cv-244-JD, 2006 WL 2850592, at *3 (D.N.H. Oct. 2, 2006); Sabey v. Butterfield, 720 F. Supp. 3d 89-90 (D. Mass. 2024)).  It is also undisputed that the Fourth Amendment protection of a home extends to the curtilage of the home. See Doc. No. 33-1 at pg. 6; United States v. Leonard, 567 F. Supp. 3d 334, 339 (D.N.H. 2021). On the other hand, as the parties also agree, the Fourth Amendment does not protect the common areas of an apartment building. Doc. No. 33-1 at pg. 6; Doc. No. 37 at pg. 16; see also United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009). The parties dispute whether the exterior entrance to Becker's apartment from the porch, the stairs, and the hallway leading to the interior apartment door are common areas or private and protected areas akin to curtilage.[3] Doc. No. 33-1 at pg. 9; Doc. No. 37 at pgs. 15-17.

"A search within the meaning of the Fourth Amendment occurs whenever the government intrudes upon any place and in relation to any item in which a person has a reasonable expectation

---

[3] Becker raises other arguments in opposition to the motion to dismiss that pertain to the nature and length of McKenney's conversation with his son, which do not appear to be pertinent to the Fourth Amendment claim at issue. See Doc. No. 37 at pgs. 18-19.

of privacy." United States v. Sheehan, 70 F.4th 36, 44 (1st Cir. 2023) (citation omitted) (internal quotation marks omitted). "The Supreme Court has set out a two-part test for analyzing the expectation question: first, whether the [individual] has exhibited an actual, subjective, expectation of privacy; and second, whether such subjective expectation is one that society is prepared to recognize as objectively reasonable." Rheault, 561 F.3d at 59 (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)). In the context of a search of an area in an apartment building, "whether to describe [the searched area] as 'common' is the heart of [the] matter." Id. To determine whether an area is "common," the court engages in "a fact-specific inquiry, taking into consideration the nature of the searched location." Id. The nature of the searched location depends on whether the area was locked or open to public access, the extent of the plaintiff's control over the area, whether other tenants in the building used the area, and the proximity of the contested area to the individual's apartment door. Id. at 60-61; see also United States v. Werra, 638 F.3d 326, 331-332 (1st Cir. 2011) ("'noting well-settled precedent that an apartment building tenant 'lacks a reasonable expectation of privacy in the common areas of an apartment building'") (citations omitted).

To get to the door of Becker's third floor apartment, McKenney entered the building's front porch, chose the door with Becker's address and mail slot, opened the door and entered the building, climbed the stairs to the third floor, walked down the hallway past Becker's personal possessions and artwork, and then arrived at the interior door to Becker's apartment. Doc. No. 1 at ¶ ¶ 69 & 77(b); Doc. No. 37 at pg. 9. There were no other units accessible from the exterior door, the stairwell, or the third-floor hallway. Becker states that he had the only key to the exterior door (although the door was apparently unlocked when McKenney entered), that no other tenants used that entrance, stairs, or hallway, and that he used the hallway as part of his apartment, leaving

his personal possessions there.  See Doc. No. 37 at pg. 9.  The private and exclusive nature of the area and Becker's use support both his subjective expectation of privacy and a reasonable expectation of privacy in that area.  As such, Becker's allegations with reasonable inferences resolved in his favor provide enough facts to show that the area inside the exterior porch door was private space for Becker's use and was not a common area either for other tenants or the public to use.

McKenney argues that she was acting under an implied license, which avoids the Fourth Amendment protection for a home's curtilage. Doc. No. 33-1 at pg. 10. Under an implied license, however, "'[t]he knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.'" United States v. Bain, 874 F.3d 1, 12 (1st Cir. 2017) (quoting Florida v. Jardines, 569 U.S. 1, 8 (2013)). "'This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.'" Id. (quoting Jardines, 569 U.S. at 12). The scope of the implied license is limited both to the area described and to the purpose for knocking, which does not include investigating the area without permission. Id. at 12-13.

An implied license may have allowed McKenney to enter the front porch and to knock on the exterior door with Becker's address and mail slot, for the purpose of receiving permission to enter. Based on Becker's allegations and McKenney's response, however, that is not what happened.  McKenney apparently did not stop to knock at the exterior door or wait for permission to enter.  Instead, she opened the door and proceeded up the stairs, down the hall, and then may

have knocked on the interior door to Becker's apartment.  See Doc. No. 1 at ¶¶ 69 & 77(b); Doc. No. 37 at pg. 9. McKenney's alleged actions exceeded the scope of a limited license.[4]

McKenney cites an email from Becker to her written after her visit on October 28, 2024, to show that Becker understood that the exterior entrance, the stairway, and the hall were not part of his apartment.[5] Doc. No. 33-1 at 9.  She does not identify the specific part of the email that supports her theory. See id. In the cited correspondence, Becker reviewed the questions McKenney asked his son during the October 28 visit. See Doc. No. 14-3 at pgs. 3-4. He wrote: "You say [Becker's son] says he didn[']t know if anyone has been by to fix items in our home. That[']s an interesting response from him because hes [sic] been in contact with maintenance man at least once yesterday and once today, in our home, fixing things, he was even in the apartment as you were at the door." Id. at pg. 4. If McKenney relies on Becker's reference to McKenney being "at the door," that is not sufficient to show Becker limited his subjective view of the apartment, as McKenney argues. Instead, his reference to the door may mean only the interior door to the apartment where Becker's son first encountered McKenney.  Construing all allegations in Becker's favor, as the standard requires, he has alleged sufficient facts to show both a subjective expectation

---

[4] The license afforded is an invitation that "does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." Jardines, 569 U.S. at 8. While evidence may be available, for purposes of summary judgment for example, to show that the general public did not stop at Becker's exterior door but instead proceeded up the stairs and down the hallway before seeking permission to enter the apartment, that is beyond the scope of this record presented for purposes of a motion to dismiss.

[5] After the report and recommendation on preliminary review issued, Becker filed a supplement to his complaint and a notice of supplementary authority which the court construed as addenda to the complaint. Doc. Nos. 14, 15, and End. Or. Aug. 26, 2025.  For that reason, the document McKenney cites may be considered as a addenda to the complaint for purposes of the motion to dismiss.

of privacy in the stairwell and hallway area and that the expectation of privacy was reasonable under the circumstances.

In these specific circumstances, Becker's allegations are sufficient to state a Fourth Amendment claim as alleged in Count I against Kimberley McKenney, and the district judge should deny the motion to dismiss based on a failure to state a claim.

## II.     Qualified Immunity

"Under the qualified immunity doctrine, an official is immune to liability for damages when his or her 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Clemente Props., Inc. v. Pierluisi-Urrutia, 165 F.4th 1, 44 (1st Cir. 2026) (quoting Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (2021) (per curiam)). Rights are clearly established if "(a) there is controlling authority or a consensus of persuasive authority sufficient to put an officer on notice that his conduct fell short of the constitutional norm; and (b) an objectively reasonable officer would have known that his conduct violated the clearly established law in the circumstances he faced." Conlon v. Scaltreto, 158 F.4th 211, 219 (1st Cir. 2025) (citation omitted) (internal quotation marks omitted). The plaintiff bears the burden to show clearly established law to defeat qualified immunity. Estate of Rahim by Rahim v. Doe, 51 F.4th 402, 410 (1st Cir. 2022).

It is clearly established that "when it comes to the Fourth Amendment, the home is first among equals," . . . [and the court] "regard[s] the area immediately surrounding and associated with the home—what our cases call the curtilage—as part of the home itself for Fourth Amendment purposes." Jardines, 569 U.S. at 6 (2013) (citation omitted) (internal quotation marks omitted). As is discussed above, the parties agree that the law was clearly established in October 2024 that a government social worker, such as McKenney, could not enter an apartment or its

curtilage without a warrant. The issue presented for qualified immunity is whether a reasonable social worker in McKenney's position would have known that the area from the exterior door to the interior door of Becker's apartment was private and protected as curtilage rather than a common area.

Based on Becker's allegations and statements in his objection, taken as true, a reasonable social worker in McKenney's position would have seen sufficient indicia of privacy in the exterior door, the stairs, and the hallway to be on notice that those were not common areas in the apartment building. Whether or not the exterior door by itself, which apparently was unlocked, would be sufficient to put McKenney on notice that the door was an entrance to a private area is less clear. But McKenney continued on through the exterior door to climb the stairs and cross the hallway with Becker's possessions and artwork in view. While the facts as alleged present a close case, the allegations are sufficient at this stage to avoid qualified immunity. Therefore, the district judge should deny the motion to dismiss based on qualified immunity.

### III. Sovereign Immunity – Eleventh Amendment

McKenney moves to dismiss Becker's Fourth Amendment claim against her in her official capacity based on sovereign immunity. A suit against a state official in her official capacity is the same as a suit against the state itself. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). For that reason, the Eleventh Amendment bars a suit against state officials sued in their official capacities for damages, unless Congress abrogated immunity or the state has waived its immunity. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Congress did not abrogate sovereign immunity for purposes of suits under 42 U.S.C. § 1983, and states are not persons for purposes of § 1983 claims. Will, 491 U.S. at 65-67.

Under <u>Ex parte Young</u>, 209 U.S. 123 (1908), sovereign immunity does not bar claims against state officials sued in their official capacities that seek only prospective injunctive relief. <u>Cotto v. Campbell</u>, 126 F.4th 761, 767 (1st Cir. 2025). That exception to sovereign immunity applies, however, only if the plaintiff "(1) 'alleges an ongoing violation of federal law' by a state official and (2) 'seeks relief properly characterized as prospective.'" <u>Id.</u> at 767-68 (quoting <u>Idaho v. Coeur d'Alene Tribe of Id.</u>, 521 U.S. 261, 296 (1997)). Because the <u>Ex parte Young</u> exception is limited to stopping ongoing violations of federal law, it cannot be used to issue a declaratory judgment against a state official for past violations of state law or an injunction that is aimed at past actions. <u>Id.</u> at 771-73.

Sovereign immunity bars Becker's claim for damages against McKenney in her official capacity. Sovereign immunity also bars Becker's official capacity claim against McKenney for a declaratory judgment that her actions on October 28, 2024, violated the Fourth Amendment. Because Becker's claim against McKenney arises from only the incident on October 28, 2024, and he does not allege any ongoing violations of federal law by McKenney, sovereign immunity bars injunctive relief against McKenney. Accordingly, the district judge should dismiss all claims against McKenney in her official capacity.

**CONCLUSION**

For the foregoing reasons, the district judge should grant the Defendant's motion to dismiss (Doc. No. 33) Count I brought against her in her official capacity but deny the motion to dismiss Count I brought against her in her individual capacity. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. The objection period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168

10

(1st Cir. 2016). Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" <u>Id.</u> (citations omitted).

Talesha L. Saint-Marc
United States Magistrate Judge


Dated:  February 19, 2026

cc:      Torrence Becker, pro se.
         Counsel of record.